IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

B.L., a minor, by and through her father, )
LAWRENCE LEVY, and her mother, )
BETTY LOU LEVY, ) Civ. No. _3:17-CV-1734_
)
                Plaintiff, )
)
     v. )
)
MAHANOY AREA SCHOOL )
DISTRICT; )
)
             Defendant. )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................. 1

PROCEDURAL HISTORY ................................................................................ 3

STATEMENT OF FACTS ................................................................................ 3

QUESTION PRESENTED ................................................................................ 7

ARGUMENT ................................................................................................... 7

I.    PLAINTIFF B.L. IS LIKELY TO SUCCEED ON THE MERITS OF HER
      FIRST AMENDMENT CLAIMS. ............................................................... 8

      A. Schools Cannot Punish Students for Private, Out-of-School Speech That
         Does Not Cause Substantial, Material Disruption to School Activities.. ..8

      B. Schools Lack the Authority to Punish Students for the Viewpoints
         Expressed in their Out-of-School Speech.. .............................................. 11

      C. The Cheerleading Rules Are Vague and Overbroad and Give School
         Officials an Impermissible Amount of Discretion to Censor Student
         Speech.................................................................................................... 13

II.   IN THE ABSENCE OF IMMEDIATE INJUNCTIVE RELIEF, PLAINTIFF
      B.L. WILL SUFFER IRREPARABLE HARM.. .......................................... 16

III.  DEFENDANT WILL SUFFER NO IRREPARABLE HARM BY
      ALLOWING PLAINTIFF TO REJOIN THE CHEERLEADING SQUAD
      AND EXERCISE HER FIRST AMENDMENT RIGHTS ON HER OWN
      TIME....................................................................................................... 17

IV.   THE PUBLIC INTEREST FAVORS THE PROTECTION OF STUDENT
      SPEECH RIGHTS. ................................................................................... 17

CONCLUSION................................................................................................. 18

i

## TABLE OF AUTHORITIES

**Cases**

*Am. Civil Liberties Union v. Reno*, 217 F.3d 162 (3d Cir. 2000) .............................16

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986)...........................................9

*B.H. v. Easton Area Sch. Dist.*, 725 F.3d 293 (3d Cir. 2013)................................8, 9

*B.H. v. Easton Area Sch. Dist.*, 827 F. Supp. 2d 392 (E.D. Pa. 2011) ................8, 18

*Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, 233 F. Supp. 2d 647 (D.N.J. 2002)................................................................................................13

*Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997) 3, 18

*Elrod v. Burns*, 427 U.S. 347 (1976) ..................................................................2, 16

*Hill v. Colorado*, 530 U.S. 703, 732 (2000) ..........................................................13

*J.S. v. Blue Mountain Sch. Dist.*, 650 F.3d 915 (3d Cir. 2011) (en banc) ....... passim

*Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205 (3d Cir. 2011) (en banc) ........................................................................................................ passim

*Matal v. Tam*, 137 S. Ct. 1744, 1763 (June 19, 2017) .............................................12

*Morse v. Frederick*, 551 U.S. 393, 405 (2007)...........................................................9

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ......................................................2

*Pittsburgh League of Young Voters Educ. Fund v. Port Auth.*, 653 F.3d 290 (3d Cir. 2011) .......................................................................................................2, 12

*Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 215 (3d Cir. 2001) ........ 11, 14

*Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 258–59 (3d Cir. 2002)....................................................................................................... 14, 17

*Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503 (1969)......................... passim

*United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998).............................................................14

ii

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943) ...........................13

**Rules**

Rule 65 of the Federal Rules of Civil Procedure .......................................................7

## INTRODUCTION

This First Amendment case arises out of the Mahanoy Area School District's removal of B.L., a sophomore high school student, from the cheerleading squad as punishment for a single, private social media post that school officials believed was "negative," "disrespectful" of the school, and "demeaning." The offending post was a "Snap" B.L. posted on Snapchat that said "fuck school fuck softball fuck cheer fuck everything," which B.L. created on her own time, outside of school, and shared only with her Snapchat friends. School officials invoked as a basis for the punishment a set of Cheerleading Rules that prohibit posting "negative information" about cheerleading online. Plaintiff B.L. seeks a temporary restraining order and preliminary injunction enjoining the District from continuing to punish B.L. for her protected out-of-school speech and directing her immediate reinstatement to the cheerleading squad.

Plaintiff is likely to succeed on the merits of her First Amendment claims for several reasons. First, it is questionable whether the District may *ever* punish a student for off-campus speech. But assuming schools do have some authority to punish out-of-school speech, that power is limited to situations where the off-campus speech caused substantial, material disruption within the school, which B.L.'s speech did not. *J.S. v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 920, 925, 933 (3d Cir. 2011) (en banc); *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*,

1

650 F.3d 205, 209, 219 (3d Cir. 2011) (en banc).  It is clear that schools lack the authority to punish students for profane or vulgar out-of-school speech.  *J.S.*, 650 F.3d at 932 & n.12; *Layshock*, 650 F.3d at 219.

Second, schools cannot punish students for expressing "negative information" about any particular aspect of the school or student life.  The right to criticize the government is at the core of what the First Amendment is designed to protect.  *New York Times v. Sullivan*, 376 U.S. 254, 269–71 (1964) (collecting cases).  And censorship of particular viewpoints is almost invariably unconstitutional.  *E.g., Pittsburgh League of Young Voters Educ. Fund v. Port Auth.*, 653 F.3d 290, 296 (3d Cir. 2011) (internal citations omitted).

Third, the cheerleading rules are vague, overbroad, and leave far too much discretion to decision-makers to make subjective decisions.  *See J.S.*, 650 F.3d at 934–36.

All of the other requirements for preliminary relief are also met.  In First Amendment cases, irreparable harm is presumed.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  The continuing harms to B.L. from the District's actions cannot be adequately remedied by damages, whereas the District will suffer no harm from restoring B.L. to her team during the pendency of this litigation.  The public

2

interest favors the protection of B.L.'s freedom of speech. *See Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997).

Plaintiff therefore asks this Court to issue a temporary restraining order and preliminary injunction immediately restoring B.L. to her prior status on the cheerleading squad and forbidding the District from continuing any punishment of Plaintiff B.L. for her out-of-school speech.

## PROCEDURAL HISTORY

This action was commenced by Verified Complaint on September 25, 2017.

## STATEMENT OF FACTS

Plaintiff B.L. is a tenth-grade honors student at Mahanoy Area High School. She has been cheerleading since fifth grade. She has been on the junior varsity cheerleading squad at Mahanoy Area High School since she started high school. The cheerleading squad is active year-round. As a member of the JV squad, B.L. practices at least twice a week, with more frequent practices during the summer, and cheers at football and basketball games and wrestling matches.

The District school board authorized the cheerleading coaches to adopt rules and regulations governing the conduct of students on the cheerleading squad. Among other things, the Cheerleading Rules specify that cheerleaders can be benched or dismissed from the team for failing two or more classes or failing to raise at least $60 for the squad. The Rules also state: "Please have respect for your

3

school, coaches, teachers, other cheerleaders and teams. Remember, you are
representing your school when at games, fundraisers, and other events. Good
sportsmanship will be enforced, this includes foul language and inappropriate
gestures." In addition, they state that "There will be no toleration of any negative
information regarding cheerleading, cheerleaders, or coaches placed on the
internet." The Rules are expressly labeled as being "subject to change" and
enforceable "at the coaches' discretions."

On Saturday, May 28, 2017, B.L. posted a "Snap" to Snapchat—a popular
social media platform[1]—featuring a photo of her and a friend holding up their
middle fingers with the text "fuck school fuck softball fuck cheer fuck everything"
superimposed on the image. The photo was taken with B.L.'s phone and posted to
Snapchat at the Cocoa Hut, a local convenience store, on a weekend, at a time
when B.L. was not participating in any school activity. The Snap did not mention
the District, her school, her cheerleading squad, or any individual by name, or
contain any visual references to the school. She shared the Snap only with her
Snapchat friends; it was not accessible to the general public.

---

[1]     Snapchat is an application for smartphones that allows users to share images
that are only available for a short time. The short-lived and self-deleting nature of
Snaps makes Snapchat different from other social media platforms such as
Facebook and Twitter, where posts do not have a built-in expiration date. *See
generally Snapchat*, Wikipedia, https://en.wikipedia.org/wiki/Snapchat (last
accessed Sept. 25, 2017).

4

Five days later, on Thursday, June 1, 2017, one of the cheerleading coaches, Ms. Luchetta, pulled B.L. out of her homeroom to inform her that she was dismissed from the cheerleading squad. Ms. Luchetta confronted B.L. with a printout of the Snap and told B.L. that the Snap was "disrespectful" to the coaches, the school, and the other cheerleaders, and that the Snap was the reason B.L. was being dismissed from the squad.

Other than creating the allegedly offending Snap, B.L. has never violated any of the Cheerleading Rules.

B.L. and her parents made several attempts to get the District to reconsider the punishment. The athletic director, high school principal, District superintendent, and District school board all upheld the cheerleading coaches' decision to remove B.L. from the squad because of her out-of-school speech.

On June 1, after B.L. was informed of her suspension from the team, B.L.'s mother spoke with Ms. Luchetta about the punishment. Ms. Luchetta reiterated what she had said to B.L. and added that the punishment was ultimately the principal's decision.

B.L. then met with the principal to ask him to reconsider his decision, and he told B.L. that he would not overrule the coaches' decision. The principal added that the school had the right to discipline B.L. for "disrespecting the school."

5

B.L.'s father also spoke with the principal on June 1, and scheduled a follow-up meeting with the administration to discuss B.L.'s punishment. The administration rescheduled the meeting several times.

On June 9, B.L.'s father wrote to the superintendent, high school principal, and athletic director to appeal B.L.'s dismissal from the team. In that letter, B.L.'s father explained that the Snap had been posted on a weekend, off-campus, and not during any school or district sporting event, and that it was accessible only to B.L.'s friends. He also explained that the First Amendment forbids public schools from punishing students because of their out-of-school speech.

On June 14, B.L.'s father met with the superintendent, athletic director, and the two cheerleading coaches. The coaches referred to a copy of the Cheerleading Rules, and stated that the content of B.L.'s Snap violated the Rules. Ms. Luchetta explained that she believed the Snap was "demeaning to me, the school, and the rest of the cheerleaders."

On June 29, B.L.'s father appeared at a school board meeting to ask the school board to reinstate B.L. to the cheerleading squad. He again explained that the Snap had been shared with B.L.'s friends on a weekend, not during any school event, and explained that the First Amendment limits public schools' ability to punish students for their off-campus speech when the speech has not caused substantial disruption. After the board meeting, Superintendent Green sent a

6

Facebook message to B.L.'s father to inform him that the school board had decided to stand by the cheer coaches' decision to remove B.L. from the team. Superintendent Green added that B.L. could try out for the cheerleading squad again next year.

On September 1, 2017, counsel for B.L. wrote to Superintendent Green and the District Solicitor to further explain the governing law and request that B.L. be reinstated to the team immediately. The letter asked for a response by the close of business on September 6, 2017. The District Solicitor did not respond to the letter by the appointed time, nor to Plaintiff's counsel's subsequent emails and calls over the following week asking whether the District needed additional time to respond.

## QUESTION PRESENTED

This First Amendment case presents the question of whether a public school may punish a student with exclusion from a sports team for out-of-school speech consisting of a private post on social media that a school official believes is "negative," "disrespectful" of the school, or "demeaning" to the sports team, in the absence of any disruption at school.

## ARGUMENT

Under Rule 65 of the Federal Rules of Civil Procedure, this Court must weigh four factors when deciding whether to grant a motion for preliminary injunction: (1) has the movant shown a reasonable probability of success on the

merits; (2) will the movant be irreparably harmed by denial of the relief; (3) will

granting preliminary relief result in even greater harm to the non-moving party;

and (4) is granting preliminary relief in the public interest. *B.H. v. Easton Area*

*Sch. Dist.*, 725 F.3d 293, 302 (3d Cir. 2013) (en banc).

In school speech cases, the plaintiff's likelihood of success on the merits is

generally dispositive. *Id.*

Because this is a non-commercial case involving a relatively small sum of

money, and the balance of hardships favors the Plaintiff, the security bond

requirement contained in Rule 65(c) of the Federal Rules of Civil Procedure should

be waived. *B.H. v. Easton Area Sch. Dist.*, 827 F. Supp. 2d 392, 409 (E.D. Pa.

2011) (citing *Elliott v. Kiesewetter*, 98 F.3d 47, 59–60 (3d Cir. 1996)).

## I.     PLAINTIFF B.L. IS LIKELY TO SUCCEED ON THE MERITS OF HER FIRST AMENDMENT CLAIMS.

### A.     *Schools Cannot Punish Students for Private, Out-of-School Speech That Does Not Cause Substantial, Material Disruption to School Activities.*

Students do not shed their constitutional rights to freedom of speech at the

schoolhouse gate. *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 506

(1969). The First Amendment limits the government's power to punish a student

for her speech. *Id.* at 506–09. Generally, public schools may not punish in-school

speech unless the speech creates a risk of substantial, material disruption to school

activities—a high bar. *Id.* at 509.

8

It is an open question whether school officials may ever punish a student for out-of-school speech without violating the First Amendment. *J.S.*, 650 F.3d at 926 n.3; *B.H.*, 725 F.3d at 303 n.9 ("We have not yet decided whether *Tinker* is limited to on-campus speech."). *See also J.S.*, 650 F.3d at 937–40 (Smith, J., concurring) (analyzing *Tinker* and its progeny and concluding that student speech doctrine does not apply to off-campus speech and that ordinary First Amendment principles apply instead).

But assuming schools do have some authority to punish students for their out-of-school conduct (which is debatable), it is clear that the school cannot rely on *Fraser's* lewd speech exception but instead must satisfy the *Tinker* standard. *J.S.*, 650 F.3d at 928–33; *see also id.* at 927 (acknowledging that "*Tinker* sets the general rule for regulating school speech").

Although the Supreme Court in *Fraser* recognized a narrow exception to *Tinker* that allows schools to punish students for lewd speech and profanity used during school,[2] the Supreme Court and Third Circuit have both made clear that schools have no power to punish lewd or profane *out-of-school* speech. *Morse v. Frederick*, 551 U.S. 393, 405 (2007) (observing that "[h]ad Fraser delivered the same speech in a public forum outside the school context, it would have been protected."); *J.S.*, 650 F.3d at 932 (noting that "*Fraser* does not apply to off-

---

[2]   *See Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986).

campus speech" and holding that *Fraser* did not justify a school's punishment for "profane language outside the school, during non-school hours").[3] Punishing students for off-campus speech that has not caused a substantial disruption at school has never been allowed by either the Supreme Court or the Third Circuit. *J.S.*, 650 F.3d at 933.

B.L.'s Snap was unambiguously out-of-school speech. She took the photo and created the Snapchat post off-campus, on a weekend, at a time when she was not participating in school activities. She limited access to the post to only her Snapchat friends. She didn't mention her school or teams by name, nor was there any visual reference to the school. B.L. was not wearing her uniform or representing the school. As the Third Circuit explained in *J.S.* and *Layshock*, this is not enough of a nexus to school to justify punishment. *See J.S.*, 650 F.3d at 929 (holding that an online parody profile of the principal created outside of school "could not 'reasonably have led school authorities to forecast substantial disruption of or material interference with school activities,'" despite the "unfortunate humiliation" it caused the principal) (quoting *Tinker*, 393 U.S. at 514); *Layshock*, 650 F.3d at 209 (holding that a school violated the First Amendment by punishing

---

[3]    As the Third Circuit explained, "[t]he most logical reading of Chief Justice Roberts' statement prevents the application of *Fraser* to speech that takes place off-campus, during non-school hours, and that is in no way sponsored by the school." *J.S.*, 650 F.3d at 932 n.12.

a student for out-of-school, online speech the principal deemed "degrading,"

"demeaning," "demoralizing," and "shocking").

   In sum, there was no basis for school officials to believe that the Snap would

have any measurable effects on school activities—let alone the substantial,

material disruption required under *Tinker*. Indeed, District officials repeatedly

explained that B.L. was being punished because her coaches disliked the *content* of

her speech—not for any negative effects caused by the speech. Punishing B.L.

under these circumstances is inconsistent with the limitations on school authority

set forth in *Tinker* and subsequent cases. *See J.S.*, 650 F.3d at 928–29; *Layshock*,

650 F.3d at 219.

### B. *Schools Lack the Authority to Punish Students for the Viewpoints Expressed in their Out-of-School Speech.*

   B.L. was punished because she caused offense—not because she disrupted

school activities (she did not). "The Supreme Court has held time and time again,

both within and outside of school context, that the mere fact that someone might

take offense at the content of the speech is not a sufficient justification prohibiting

it." *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 215 (3d Cir. 2001).

   The Supreme Court has made clear that "a mere desire to avoid the

discomfort and unpleasantness that always accompany an unpopular viewpoint" is

not a sufficient justification for punishing student speech. *Tinker*, 393 U.S. at 509;

*J.S.*, 650 F.3d at 926.

11

Singling out certain viewpoints for censorship is almost invariably

unconstitutional. *See, e.g., Pittsburgh League of Young Voters Educ. Fund v. Port*

*Auth.*, 653 F.3d 290, 296 (3d Cir. 2011) (observing that "[v]iewpoint

discrimination is anathema to free expression") (citing *R.A.V. v. St. Paul*, 505 U.S.

377, 382 (1992); *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n*, 460 U.S. 37,

46 (1983)). A rule that prohibits students from posting "negative information"

online or expressing "disrespect" but does not prohibit them from posting "positive

information" or expressing respect is unquestionably a form of impermissible

viewpoint discrimination. *See Matal v. Tam*, 137 S. Ct. 1744, 1763 (June 19,

2017) (reasoning that a ban on offensive speech constitutes viewpoint

discrimination because "[g]iving offense is a viewpoint," and striking down federal

law that prohibited registration of trademarks that disparage any group of people).

The First Amendment does not permit the District to punish B.L. merely

because school officials were offended by thoughts she expressed outside of

school, on her own time. As the Third Circuit observed in *J.S.*: if the school's

punishment is allowed to stand, "two students can be punished for using a vulgar

remark to speak about their teacher at a private party, if another student overhears

the remark, reports it to the school authorities, and the school authorities find the

remark 'offensive.'" *J.S.*, 650 F.3d at 933. Given the sweeping breadth of the

Cheerleading Rules' prohibitions on speech, if the District's punishment of B.L. is

12

allowed to stand, this would open the door to public schools excluding from school

activities all students who are not willing to sacrifice their First Amendment rights

entirely during their formative school years. The First Amendment does not allow

schools to place that demand on students. Schools must tolerate even "negative,"

"disrespectful," and "demeaning" speech "in order to provide adequate breathing

room for valuable, robust speech—the kind that enriches the marketplace of ideas,

promotes self-government, and contributes to self-determination." *J.S.*, 650 F.3d

at 941 (Smith, J., concurring). As the Supreme Court observed in 1943, striking

down a requirement that students salute the American flag:

> That [public schools] are educating the young for
> citizenship is reason for scrupulous protection of
> Constitutional freedoms of the individual, if we are not to
> strangle the free mind at its source and teach youth to
> discount important principles of our government as mere
> platitudes.

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943).

### C. The Cheerleading Rules Are Vague and Overbroad and Give School Officials an Impermissible Amount of Discretion to Censor Student Speech.

A restriction on speech violates the First Amendment if it is so vague that it

does not allow a person of ordinary intelligence to determine what conduct it

prohibits, or invites government officials to enforce it in an arbitrary and

discriminatory way. *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Child*

*Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, 233 F. Supp. 2d

647, 666 (D.N.J. 2002). A government policy restricting speech is unconstitutional when a public official's discretion is "not constrained by objective criteria" and instead gives the official room to make decisions based on "ambiguous and subjective reasons." *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998) (quoting *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996)).

A school regulation of student speech is overbroad when there is a "a likelihood that the [regulation's] very existence will inhibit free expression" by "inhibiting the speech of third parties who are not before the Court." *Saxe*, 240 F.3d at 214 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984)). A school rule regulating student speech may be struck down on its face for overbreadth if its prohibitions reach too much constitutionally protected expression, and the overbreadth is "substantial in relation to the [regulation's] plainly legitimate sweep." *E.g., Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 258–59 (3d Cir. 2002) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).

Several portions of the Cheerleading Rules contain vague prohibitions on speech that purport to give the cheerleading coaches broad power to censor student speech, without providing any objective criteria to cabin the coaches' discretion.

14

Indeed, the Rules disclaim any need for objective standards or consistent application, and instead expressly reserve to the coaches the right to change the rules and to rely on their discretion in interpreting the Rules and deciding whether punishment is warranted.

Determining whether a student has violated the prohibition on posting "negative information regarding cheerleading, cheerleaders, or coaches" online will necessarily involve subjective value judgments, as will the determination about whether speech reflects "respect" and "good sportsmanship." These prohibitions reach broad swaths of protected speech, and would seem to allow school officials to punish students for their off-campus speech whether the offending statement is an opinion that school officials disagree with, a challenge to school authority or criticism of the school, a parody about school officials that the officials do not find funny, or a true statement of fact that paints the school in an unflattering light. The First Amendment does not permit censorship pursuant to such vague, broad, and subjective standards. *See J.S.*, 650 F.3d at 933 (cautioning that upholding punishment of students for out-of-school speech that school officials find offensive "would vest school officials with dangerously overbroad censorship discretion.").

## II.   IN THE ABSENCE OF IMMEDIATE INJUNCTIVE RELIEF, PLAINTIFF B.L. WILL SUFFER IRREPARABLE HARM.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Am. Civil Liberties Union v. Reno*, 217 F.3d 162, 180 (3d Cir. 2000) (generally in First Amendment challenges plaintiffs who meet the merits prong of the test for a preliminary injunction "will almost certainly meet the second, since irreparable harm normally arises out of the deprivation of speech rights.") (internal citation omitted); *B. H. v. Easton Area Sch. Dist.*, 827 F. Supp. 2d 392, 409 (E.D. Pa. 2011) ("It is well-established that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'") (citation omitted).

Plaintiff B.L. is barred from her chief extracurricular activity on an ongoing basis as punishment for her protected self-expression. And if she were restored to the team, but the Cheerleading Rules remained in force, she would be subject to continuing censorship of her protected, private speech. She is suffering, and in the absence of the immediate injunctive relief requested, she will continue to suffer irreparable harm.

16

### III.   DEFENDANT WILL SUFFER NO IRREPARABLE HARM BY ALLOWING PLAINTIFF TO REJOIN THE CHEERLEADING SQUAD AND EXERCISE HER FIRST AMENDMENT RIGHTS ON HER OWN TIME.

The Court must balance the ongoing irreparable harm to Plaintiff against any harm that the District would suffer from the requested injunctive relief.  The District has no legitimate interest in suppressing students' First Amendment rights. Thus, the District does not face any cognizable harm from allowing B.L. to rejoin the cheerleading squad or from enjoining the provisions of the Cheerleading Rules that infringe on cheerleaders' private, off-campus, protected speech.  In this case— as in many student speech cases—the Defendant's side of the scale is empty.  As our courts have often observed, "[e]veryday school discipline does not depend on the necessity of a speech code." *Sypniewski*, 307 F.3d at 259.  This is all the more true with respect to attempts to regulate student expression and conduct off campus.  Consequently, the District would suffer no harm if this Court granted the requested preliminary relief.

### IV.   THE PUBLIC INTEREST FAVORS THE PROTECTION OF STUDENT SPEECH RIGHTS.

The Court must also weigh the effect on the public of enjoining the Cheerleading Rules' speech prohibitions and restoring B.L. to her cheerleading squad.  This factor also supports B.L.'s request for an injunction.  "[T]he public's interest favors the protection of constitutional rights in the absence of legitimate

17

countervailing concerns." *B.H.*, 827 F. Supp. 2d at 409 (quoting *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997)).

## CONCLUSION

All four factors for granting a temporary restraining order or preliminary injunction weigh in Plaintiff B.L.'s favor.  For all the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's motion and enter the accompanying proposed order.

Dated: September 25, 2017                    Respectfully submitted,


                                             */s/ Molly Tack-Hooper*
                                             Molly Tack-Hooper (PA 307828)
                                             Mary Catherine Roper (PA 71107)
                                             AMERICAN CIVIL LIBERTIES
                                             UNION OF PENNSYLVANIA
                                             P.O. Box 60173
                                             Philadelphia, PA 19102
                                             Tel: (215) 592-1513 ext. 113
                                             Fax: (215) 592-1343
                                             mtack-hooper@aclupa.org
                                             mroper@aclupa.org

18

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULES</u>

I hereby certify that:

1.      This brief complies with the typeface requirements contained in Local Rule 5.1 because this brief has been prepared using Times New Roman size 14 font, double spaced, in Microsoft Word.

2.      This brief complies with Local Rule 7.8(b) because the body of the brief contains 3,934 words, as determined by the word count feature in Microsoft Word.

3.      In accordance with Local Rule 7.1, Plaintiff's counsel sought concurrence from Defendant's counsel.  Defendant's counsel does not concur in the relief sought in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

Dated:  September 25, 2017            */s/ Molly Tack-Hooper*
                                      Molly Tack-Hooper (PA 307828)

## <u>CERTIFICATE OF NON-CONCURRENCE</u>

In accordance with Local Rule 7.1, Plaintiff's counsel sought concurrence from Defendant's counsel.  Defendant's counsel does not concur in the relief sought in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.


Dated:  September 25, 2017                    <u>/s/ Molly Tack-Hooper</u>
                                              Molly Tack-Hooper (PA 307828)
                                              AMERICAN CIVIL LIBERTIES
                                              UNION OF PENNSYLVANIA
                                              P.O. Box 60173
                                              Philadelphia, PA 19102
                                              Tel: (215) 592-1513 ext. 113
                                              Fax: (215) 592-1343
                                              mtack-hooper@aclupa.org