**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| B.L. a minor, by her father, LAWRENCE LEVY, and her mother, BETTY LOU LEVY, | CIVIL ACTION NO. 3:17-CV-1734 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| MAHANOY AREA SCHOOL DISTRICT, | |
| Defendant. | |

## **MEMORANDUM**

Presently before this Court is a Motion for a Preliminary Injunction (Doc. 2) filed by B.L., Lawrence Levy, and Betty Lou Levy (collectively "Plaintiffs"). This action stems from B.L.'s removal from Mahanoy Area High School's junior varsity cheerleading squad for her use of profanity off-campus on a weekend. Plaintiffs are able to establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in their favor; and (4) an injunction is in the public interest. Specifically, Plaintiffs establish their likely success on the merits because the District is unable to punish its students for profane, off-campus speech. For these reasons, this Court will grant Plaintiffs' Motion for a Preliminary Injunction.

## **I. Background**

### **A. Factual Background**

Plaintiff B.L. ("Plaintiff"), is currently an honor student and sophomore at Mahanoy Area High School. B.L. began cheerleading in fifth grade, and has been on the junior varsity cheerleading squad at Mahanoy Area High School since she enrolled as a freshman. As a member of the cheerleading squad at the High School, Plaintiff attends practices at least twice a week, and cheers at football, basketball, and wrestling matches. Additionally, she has been tasked with raising money to support the financial needs of the District's

cheerleading program.

The District's school board empowered the cheerleading coaches to adopt rules and regulations governing the conduct of students participating in the cheerleading program. In pertinent part, the rules developed by the squad's coaches state:

> "Please have respect for your school, coaches, teachers, and other cheerleaders and teams. Remember, you are representing your school *when at games, fundraisers, and other events*. Good sportsmanship will be enforced, this includes foul language and inappropriate gestures. . .. There will be no toleration of any negative information regarding cheerleading, cheerleaders, or coaches placed on the internet."

(Defs. Ex. 3 (emphasis added).)

On May 28, 2017, Plaintiff posted a "Snap" featuring a photo of her and a friend holding up their middle fingers with the text, "fuck school fuck softball fuck cheer fuck everything" superimposed on the image.[1] Plaintiff took the Snap at the Cocoa Hut–a local convenience store–on the weekend when she was not participating in any school activity. Notably, this Snap did not specifically mention the High School or picture the High School.[2] Further, the Snap was only shared with Plaintiff's friends[3] on SnapChat, and thus was not available to the general public.

Five days after Plaintiff sent the Snap, on June 1, 2017, one of the cheerleading squad's coaches, Ms. Luchetta, pulled Plaintiff out of class to inform her that she was being

---

[1] A "Snap" is a digital image that may be accompanied by text sent through an application developed by the company, SnapChat. The SnapChat application is available on smart phones and is unique because it only allows users to send "Snaps" to specific individuals for a short amount of time (generally under 10 seconds). Notably, a "Snap" is self-deleting. After an image is sent, users may not access it again.

[2] Not only was the High School not directly pictured, but the two students pictured were not wearing their High School uniforms or any apparel containing the School's insignia. Put simply, there is no explicit reference to the High School in the Snap.

[3] It is not clear exactly how many people had access to this Snap. However, Plaintiff B.L. suggested during her testimony at the Preliminary Injunction hearing that the Snap could have reached roughly 250 individuals.

2

dismissed from the cheerleading squad. At that time, Luchetta produced a printout of Plaintiff's Snap and told Plaintiff that the Snap was "disrespectful" to the coaches, the school, and the other cheerleaders.

Following Plaintiff's dismissal from the cheerleading squad, Plaintiff's parents made a number of attempts to get the District to reconsider their daughter's punishment. During these attempts to return to the cheerleading squad, Plaintiff was told that the school had the right to discipline her for "disrespecting the school," and that the coaches believed that her Snap was "demeaning to [the coach], the school, and the rest of the cheerleaders."

At the hearing before this Court, Luchetta testified that she suspended plaintiff from the cheerleading squad because of her use of profanity.

There is no question that the District knew the Snap was produced off of school property during the weekend when no school event was in progress.

**B. Procedural Background**

On September 25, 2017 Plaintiffs filed the instant Complaint against the Mahanoy Area School District. (Doc. 1.) Accompanying the Complaint was a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. (Doc. 2.) This Court granted Plaintiffs' Motion for a TRO at 11:05am on September 25, 2017, and scheduled a hearing on the Motion for a Preliminary Injunction ("hearing"). That hearing occurred on October 2, 2017 at 9:30am.

Plaintiffs' Motion for a Preliminary Injunction is ripe for review.

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right.'" *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "Awarding preliminary relief, therefore, is only appropriate 'upon a clear showing that the plaintiff is entitled to such relief.'" *Id*. (quoting *Winter*, 555 U.S. at 22). "A plaintiff seeking a preliminary injunction must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of

3

equities tips in his favor; and (4) that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The "failure to establish any element . . . renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mart Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). Notably, the "movant bears the burden of showing that these four factors weigh in favor of granting the injunction." *Ferring Pharms., Inc v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians*, 920 F.2d at 192).

### III. Discussion

**A. Plaintiffs are Likely to Succeed on the Merits**

Plaintiffs contend that this action is likely to succeed on the merits for two[4] distinct reasons: (1) Schools cannot punish students for private, out-of-school speech that does not cause substantial, material disruption to school activities, and (2) the cheerleading rules are vague, overbroad, and give school officials an impermissible amount of discretion to censor student speech.[5] On the other hand, the District has made the sweeping argument that "this is not a First Amendment case." But, the District has also argued that it has the authority to punish students for profane, out-of-school speech, and further that speech directed at the School District should be considered on-campus speech.

---

[4] While Plaintiffs' Brief in Support of their Motion for a Preliminary Injunction contains three distinct grounds for supporting their position, Plaintiffs abandoned one during the hearing: schools lack the authority to punish students under a policy that discriminates against alternate viewpoints. In fact, Plaintiffs' counsel noted at the hearing that this case was now solely about the District's censure of profanity as opposed to viewpoint discrimination.

[5] This Court will not address Plaintiffs' second argument because the grant of preliminary relief can be supported solely on the finding that the School District violated Plaintiff B.L.'s First Amendment right when it punished her for profane speech that originated outside of school. Further, this Court remains unconvinced that the policy is in fact void-for-vagueness or unconstitutionally overbroad.

4

(1) The School District may not punish a student for profane speech generated out-of-school

Plaintiff first contends that this case is likely to succeed on the merits because the school may not punish students for private, out-of-school speech that does not cause a substantial, material disruption to school activities. This is correct.

As an initial matter, there is no question that the First Amendment limits that ability of a school to impose punishment for speech protected under the Amendment's ambit. As has been repeated a number of times since the Supreme Court decided *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503 (1969), students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Rather, the Court has held that schools may only[6] limit speech or punish students for speech that is (1) "vulgar, lewd, profane, plainly offensive" or (2) "is reasonably expected to substantially disrupt the school.[7]" *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986); *Tinker*, 393 U.S. at 514.

Notably, the decisions rendered by the Supreme Court in *Tinker* and *Fraser* dealt with speech made on a school's campus. While courts have allowed schools to punish a student for out-of-school speech that was reasonably expected to substantially disrupt the school, the Supreme Court has noted that schools have no power to punish "lewd or

---

[6] Notably, the Supreme Court has provided other scenarios in which a school may limit student speech, but the two types of speech identified are the only two relevant to the instant matter. *See, e.g.*, *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 262-64 (1988) (allowing a principal to withhold two pages of a high school student-run newspaper from publication because schools have greater control over speech that appears school-sponsored.).

[7] The District has made no argument that the Snap sent by Plaintiff B.L. would substantially disrupt the operation of the school, instead the District solely relies upon Plaintiff's use of profanity. Therefore, the District will have to rest on the argument that she may be punished for the content of her Snap under *Fraser*.

5

profane" speech–as described in *Fraser*–when it occurs outside of the school context. *See Fraser*, 478 U.S. at 688 ("If [the student] had given the same speech outside of the school environment, he could not have been penalized simply because government officials considered his language to be inappropriate. . . ."); *Morse v. Frederick*, 551 U.S. 393, 405 (2007). In fact, the Third Circuit–in a case almost identical to the instant action–held that "*Fraser* does not apply to off-campus speech." *J.S. v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 932 (3d Cir. 2011) (en banc); *see also Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205 (3d Cir. 2011) (en banc) (noting that a principal could not punish a student for speech that was "degrading, demeaning, demoralizing, and shocking" because the speech was made online, out-of-school.). There, a School District suspended a student for creating an online profile that made fun of her school's principal. *Id.* at 920. The student created the online profile during the weekend, and on her home computer. *Id.* While the Third Circuit believed that the student's conduct could be construed as "lewd or profane," the school still violated the student's First Amendment right when it punished her because the speech was made off-campus. *Id.* at 932; *see also Cohen v. Cal.*, 403 U.S. 15 (1971) (noting that in a non-school setting, the state may not make a "single four-letter expletive a criminal offense."). Simply put, the ability of a school to punish lewd or profane speech disappears once a student exits school grounds.

Here, the conduct of Plaintiff directly parallels the conduct of the Plaintiff in *J.S. v. Blue Mountain Sch. Dist.* ("*Blue Mountain*"); both students created content[8] that was

---

[8] It is important to note that the content in *Blue Mountain* was substantially more explicit than in the instant matter. In *Blue Mountain* the online profile created by the student accused her principal of having sex in his office, hitting on students, and being a "sex addict." Additionally, the student in *Blue Mountain* specifically named and personally attacked members of the school's staff and their families. It is this speech that was protected by the Third Circuit because it originated outside of the control of the school district. In comparison, here, the Plaintiff made a generic statement: "fuck

6

distributed through use of the internet during the weekend, and on a device that was not owned or controlled by the school district. Additionally, neither student was on school property when the speech was generated. As such, the same rule that prevented the school district from levying punishment in *Blue Mountain* should be restated here: a student's potentially lewd or profane speech created off-campus must not subject that student to punishment by a public school district. It is important to note that the cheerleading coach, who was in part responsible for the discipline of Plaintiff, testified that discipline was imposed because of Plaintiff's use of profanity.

While this Court believes the Third Circuit has made clear the limits placed on a School District seeking to restrict a student's out-of-school speech, Defendant seeks to have this Court hold that a student may be punished for out-of-school speech so long as the punishment does not encroach on what the District refers to as a "protected property interest." In other words, the District can levy any punishment it chooses so long as they do not suspend or expel a student.[9] As the District's counsel made clear at the hearing, such holding would mean that a student could be barred from an extracurricular activity if they

---

school fuck softball fuck cheer fuck everything."

9    The District principally relies on a single Third Circuit case to support its proposition: *Blasi v. Pen Argul Area Sch. Dist.*, 512 Fed. App'x 173 (3d Cir. 2013). However, that case is distinguishable from the instant case for a number of reasons. There, a father was banned from a single basketball game taking place on school grounds after he sent 17 "scathing and threatening" emails to coaches of the school's basketball team. Thus, a student's out-of-school speech was not at issue in *Blasi*. Second, the content of the emails in *Blasi* is drastically different than the content of the Snap at issue here. As the *Blasi* Court noted, the emails could properly invoke the *Tinker* doctrine because the threatening nature of the emails could have lead a reasonable person to believe disruption of the school's operation may follow. But here, the District has already admitted that B.L was only punished because of the profanity contained within her Snap, not because they had a reasonable fear of disruption. Finally, in *Blasi* the emails were directed at a specific individual at the school. Remember, B.L.'s Snap was sent to friends on the weekend and was deleted before school was ever in session.

7

were at home with friends and uttered a profanity that was subsequently reported to the school. In essence, counsel suggests interpreting this Circuit's jurisprudence to allow school children to serve as Thought Police–reporting every profanity uttered–for the District. Such construction is "unseemly and dangerous." *Layshock*, 650 F.3d at 216.

The Third Circuit has not offered a separate standard to analyze student speech in cases where the punishment was removal from an extracurricular. In fact, when presented with cases where students were removed from an extracurricular due to their speech, the Third Circuit has commingled such punishment with a student's suspension or expulsion. *See, e.g., id.* at 210, 212-14, 216 (finding a student's First Amendment right was violated when a school district imposed punishment that included suspension and a ban from extracurricular activities due to the student's out-of-school speech) ("It would be an unseemly and dangerous precedent to allow the state, in the guise of school authorities, to reach into a child's home and control his/her actions there to the same extent that it can control that child *when he/she participates in school sponsored activities.*"(emphasis added)); *B.H. v. Easton Area Sch. Dist.*, 725 F.3d 293, 300 (3d Cir. 2013) (applying both *Fraser* and *Tinker* to find that a student's First Amendment right was violated when she was punished with a one-and-a-half day in-school suspension, and a ban from at least one extracurricular activity); *see also Tinker*, 393 U.S. at 512-14 ("A student's rights, therefore, do not embrace merely the classroom hours. When he is in the cafeteria, or on the playing field, or on the campus during the authorized hours, he may express his opinions, even on controversial subjects."). This Court will refuse to offer a different framework for analyzing student speech cases where the punishment for speech involved a suspension from an extracurricular activity as opposed to a suspension or expulsion from school. Therefore, *Blue Mountain* and *Layshock* apply to prevent a student from being punished for profane speech originating outside of school.

Defendant also argues that Plaintiff's Snap should be construed as on-campus speech, and thus the *Fraser* doctrine would enable the District to punish her for the profanity contained within her Snap. While an *identical* argument was made and rejected

by the Third Circuit in *Layshock*, this Court will make clear why the District's cited authority fails to support its position. *See id.* at 216-18. To support the application of *Fraser* to out-of-school speech Defendant points to just two cases. First, Defendant cites a Pennsylvania Supreme Court case: *J.S. ex rel H.S. v. Bethlehem Area Sch. Dist.*, 807 A.2d 847 (Pa. 2002). There, the Court held that off-campus speech, specifically speech generated on the internet, could be "imported" onto school grounds if the speech was directed at a specific audience at the school and was accessible on school property. *Id.* at 685. The Third Circuit has plainly stated that this case does not support the idea that profane speech created off-campus can be "imported" on-campus to invoke *Fraser*. *Layshock*, 650 F.3d at 217. Rather, the Circuit held that the death threats made by the student in that case could have caused a substantial disruption at the school and thus invoked *Tinker*, not *Fraser*. *Id.* And here, District's counsel proffered, "this is not a *Tinker* case." Therefore, the District's reliance on *Bethlehem Area School District* is misplaced. Second, Defendant cites to a decision rendered by the United States Court of Appeals for the Fourth Circuit: *Kowalski v. Berkeley County Sch.*, 652 F.3d 565 (4th Cir. 2011). This case, like *Bethlehem Area School District*, is not instructive here. In *Kowalski*, the Fourth Circuit made a point to note that the Third Circuit sitting en banc concluded that "a school could not punish a student for online speech merely because the speech was vulgar and reached the school." 652 F.3d at 573 (citing *Layshock*, 650 F.3d at 205). Since the Third Circuit precedent cited by the court in *Kowalski* remains in place, this Court's decision will not be swayed by the decision of a sister Circuit. Additionally, the District again misconstrues this case as one providing the District authority under *Fraser* to prohibit profane speech, rather than as a case meeting the criteria set forth in *Tinker*. *Id.* ("We need not resolve, however, whether this was in-school speech and therefore whether *Fraser* could apply because the School District was authorized by *Tinker* to discipline [Plaintiff]. . . .").

Finally, the District advanced the argument that the Snap did not implicate the First Amendment because it was not expressive speech. In this Court's view, the words and gesture in the Snap qualify as expressive speech.

9

Because this Circuit has made clear that *Fraser*'s profanity exception to *Tinker* does not apply to off-campus speech and Plaintiff B.L.'s speech cannot be considered on-campus speech, Plaintiffs are likely to succeed on the merits.

**B. Irreparable Harm**

Plaintiffs will suffer irreparable harm if preliminary relief is not granted. "[T]o show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). The Supreme Court has stated that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1973). The Third Circuit has held similarly. *See, e.g.*, *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113 (3d Cir. 2013) (noting that a restriction on students' exercise of their right to freedom of speech "unquestionably constitutes irreparable harm."); *B.H. v. Easton Area Sch. Dist.*, 827 F. Supp. 2d 392, 409, aff'd 725 F.3d 293 (3d Cir. 2013).

Here, as Plaintiffs note, Plaintiff B.L. has been "barred from her chief extracurricular activity on an ongoing basis as punishment for her protected self-expression." (Doc. 3, at 20.) Further, if the cheerleading rules remain in place, Plaintiff B.L. would be subject to continuing censorship of her protected speech.[10] (*Id.*) Because these alleged harms refer directly to a restriction on Plaintiff B.L.'s exercise of her right to freedom of speech, she has "unquestionably" established that irreparable harm would exist absent preliminary relief. *See Pocono Mountain Sch. Dist.*, 710 F.3d at 113.

**C. Balance of the Hardship Favors Plaintiffs**

"To determine which way the balance of hardship tips, a court must identify the harm to be caused by the preliminary injunction against the possibility of the harm caused by not

---

[10] The District seems to ignore the fact that B.L. would return to tryout for the team even if the suspension for this cheerleading season remains in place.

issuing it." *Buck v. Stankovic*, 485 F. Supp. 2d 576 (M.D. Pa. 2007) (citing *Los Angeles Memorial Coliseum Commission v. NFL*, 634 F.2d 1197, 1203 (9th Cir. 1980)); *see also Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 178 (3d Cir. 2002).

The District will suffer no harm as a result of the preliminary injunction. The District only proffers a single potential harm, the loss of the speech policy in question. The District suggests that if the speech policy is eliminated the District will have no means to discipline other cheerleaders who "[follow] B.L.'s example" and use profanity while not in school or engaging in a school sponsored activity. (Doc. 9, at 23.) However, this is not a cognizable harm to the district because "school discipline does not depend on the necessity of a speech code" like the one at issue here. *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 259 (3d Cir. 2002). On the other hand, Plaintiff faces continued censure due to her earlier speech, and future punishment based on her out-of-school speech if preliminary relief is not granted.

Because the District offers no legitimate harm that could be caused by the preliminary injunction, the balance of hardship tips in favor of the Plaintiffs.

### D. Relief is Favored by the Public Interest

If a party can demonstrate "both a likelihood of success on the merits and irreparable injury," the public interest will typically favor that particular party. *Miller v. Skumanick*, 605 F.Supp.2d 634, 647 (M.D. Pa. 2009) *aff'd sub nom. Miller v. Mitchell*, 598 F.3d 139 (3d Cir. 2010). However, courts should still weigh all four factors before deciding whether to grant the injunction. *Id.* So, even though this Court will find that Plaintiffs are likely to succeed on the merits and will suffer irreparable harm absent preliminary relief, the public's interest must be considered.

Plaintiffs asset that granting preliminary relief will be in the public interest because "the public's interest favors the protection of constitutional rights in the absence of legitimate countervailing concerns." *Easton Area Sch. Dist*, 827 F. Supp 2d at 409 (citing *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997)). Plaintiffs correctly note that this is a First Amendment case, and that this case deals directly with the protection

of speech within the Amendment's ambit. Further, the only countervailing concern evident on these facts, and presented by the District, is the suspension of the cheerleading speech policy. But, as already noted, "school discipline does not depend on the necessity of a speech code." *Sypniewski*, 307 F.3d at 259. Therefore, Plaintiff is correct in noting that the interest of the public weighs in favor of granting her Motion.

## IV. Conclusion

This Court will grant Plaintiffs' Motion for a Preliminary Injunction because Plaintiffs are able to establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in their favor; and (4) an injunction is in the public interest.

An appropriate order follows.

October 5, 2017  
Date

/s/ A. Richard Caputo  
A. Richard Caputo  
United States District Judge