# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| B.L., a minor, by her father, LAWRENCE LEVY, and her mother, BETTY LOU LEVY | : <br> : <br> : <br> : Civil Action No. 3:17-cv-1734 <br> : |
| Plaintiffs, | : (The Hon. A. Richard Caputo) |
| v. | : <br> : |
| MAHANOY AREA SCHOOL DISTRICT, | : <br> : |
| Defendant. | : |

**DEFENDANT'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT REPORT AND
<u>TESTIMONY OF LAWRENCE J. MUSSOLINE, Ph. D.</u>**

Michael I. Levin (PA 21232)
David W. Brown (PA 201553)
LEVIN LEGAL GROUP, P.C.
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
mlevin@levinlegalgroup.com
dbrown@levinlegalgroup.com
Phone: (215) 938-6378

*Attorneys for Defendant*

1

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................1

II.  FACTS .........................................................................................1

III. ARGUMENT .................................................................................3

    A. Standard for Admissibility .........................................................3

    B. Dr. Mussoline's Testimony is Sufficiently Reliable....................5

    C. Dr. Mussoline's Testimony Fits the Case and Is Helpful to a Jury ...........11

    D. Dr. Mussoline's Testimony Will Not Include Legal Conclusions .............13

        1. Dr. Mussoline should be permitted to testify without legal conclusions on practices regarding extracurricular activities........14

        2. Dr. Mussoline has relevant experience with collegiate cheerleading in addition to his online research ................................15

VI. CONCLUSION.............................................................................17

CERTIFICATES of COMPLIANCE and SERVICE

# **TABLE OF AUTHORITIES**

## **Cases**

*Aiello v. City of Wilmington, Del.*, 623 F.3d 845 (3d Cir. 1980)..............................13

*Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325 (3d Cir. 2002)...............8

*Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134 (3d Cir. 1983)..........................9

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) .................. passim

*Dominic J. v. Wyoming Valley West High School*, 362 F. Supp. 2d 560 (M.D. Pa. 2005) ...........................................................................................................14

*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) .................................................3

*Johnson v. Cache County School Dist.*, 323 F. Supp. 3d 1301 (D. Utah 2018)......14

i

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ................................... 3, 4, 5, 8

*Lauria v. Amtrak*, 145 F.3d 593 (3d Cir. 1998) ....................................................11

*Orner v. Nat. Beef Packaging, Co., LLC*, No. 4:13-CV-0837, 2014 WL 6983231 (M.D. Pa. Dec. 9, 2014)......................................................................................6, 7

*Pineda v. Ford Motor Co.*, 520 F.3d 237 (3d Cir. 2008)..........................................8

*Roberson v. City of Philadelphia*, Civ. No. 99–3574, 2001 WL 210294 (E.D. Pa. Mar. 1, 2001)...................................................................................................5

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396 (3d Cir. 2003) ..........6

*Voilas v. General Motors Corp.*, 73 F. Supp. 2d 452 (D.N.J. 1999)........................5

*Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998) .......................................................3

**Rules**

Fed. R. Evid. 702 ......................................................................... 1, 3, 4, 8

## I.    INTRODUCTION

Plaintiffs have filed a motion seeking to exclude the testimony of the expert witness for the Defendant Mahanoy Area School District (the "District") on the grounds that the testimony is allegedly unsupported by a reliable methodology, addresses irrelevant issues, and encompasses opinions outside of his expertise. However, as will be shown, the Plaintiffs seek to improperly impose the technical standards of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) to expert testimony based not on scientific knowledge but rather on decades of experience as a Pennsylvania educator.  However, when the proper standard of Fed. R. Evid. 702 is applied, it is clear that the testimony should be admitted.

## II.    FACTS

In May 2017, B.L. tried out for a spot on the Mahanoy Area High School ("MAHS") cheerleading team for the 2017-2018 school year.  B.L.'s tryout performance did not earn her a spot on the varsity team, so she was placed on the junior varsity team for the second consecutive year.  B.L. was provided with the Mahanoy Area High School Cheerleading Rules (the "Cheerleading Rules"), which outline expectations for team members.  The rules state, "Please have respect for your school, coaches, teachers, other cheerleaders and teams.  . . . Good sportsmanship will be enforced, this includes foul language and inappropriate gestures."  They further state, "There will be no toleration of any

negative information regarding cheerleading, cheerleaders, or coaches placed on the Internet."

On the evening of May 29, 2017, B.L. posted a photograph on the Snapchat social media platform showing her and a friend extending their middle fingers. The photograph had wording superimposed, "Fuck school fuck softball fuck cheer fuck everything."  B.L. later admitted that she made the posts and said she did so out of frustration over not making the varsity team.  The cheerleading coaches suspended B.L. from the team for the 2017-2018 school year, but stated that she could return for her junior year in 2018-2019.

On September 25, 2017, Plaintiffs filed the Complaint in this litigation and a Motion for Temporary Restraining Order and Preliminary Injunction.  On October 5, 2017, the motion was granted, and B.L. was reinstated to the cheerleading team as this litigation continued.

The Defendant has retained an expert witness, Dr. Lawrence J. Mussoline, an educator with more than 30 years' experience as a teacher, administrator, and school district superintendent.   Dr. Mussoline issued a report outlining the testimony that he could provide to assist a jury regarding several topics pertinent to the decision in this matter.  On December 20, 2018, Plaintiffs filed a Motion to

Exclude the Use of the Expert Report or Expert Testimony of Lawrence J. Mussoline, Ph.D. (the "Motion").[1]

## III.   ARGUMENT

### A.   Standard for Admissibility

The admissibility of expert testimony is governed by Federal Rule of Evidence 702,[2] which requires an expert witness to have "specialized knowledge" regarding the area of testimony.  "The basis of this specialized knowledge 'can be practical experience as well as academic training and credentials,'" and "[w]e have interpreted the specialized knowledge requirement liberally." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (citation omitted).  However, "'at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . . .'"  *Id.* (citation omitted); *see also, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-50 (1999), the U.S. Supreme Court held that the basic gatekeeping function described in *Daubert* applies to all expert testimony, not just "scientific" testimony.

> [A] trial court may consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that

---

[1]    A copy of Dr. Mussoline's expert report is attached to the Motion as Exhibit A.  A copy of the transcript of the expert deposition of Dr. Mussoline is attached to the Motion as Exhibit B.

[2]    Rule 702 was amended in 2000 in response to *Daubert* and the many cases applying *Daubert*, including *Kumho Tire*.

testimony's reliability.  But, as the Court stated in *Daubert*, the test of reliability is "flexible," and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case.  Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.

*Id.* at 141-42.

The Court added that in cases not involving scientific testimony, "'[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'"  *Id.* at 150 (citation omitted).  In such cases, the Court said, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.*[3]  In addition, the Court made it clear that a court of appeals is to apply an abuse-of-discretion standard, not only to a trial court's ultimate decision to admit or exclude expert testimony, but to "the trial court's decision about how to determine reliability." *Id.* at 152.

---

[3]       The notes to the 2000 amendments to Rule 702 state in pertinent part:

*Daubert* set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony.  . . .  No attempt has been made to "codify" these specific factors. *Daubert* itself emphasized that the factors were neither exclusive nor dispositive. Other cases have recognized that not all of the specific *Daubert* factors can apply to every type of expert testimony. In addition to *Kumho*, 119 S.Ct. at 1175, *see Tyus v. Urban Search Management*, 102 F.3d 256 (7th Cir. 1996) (noting that the factors mentioned by the Court in *Daubert* do not neatly apply to expert testimony from a sociologist).

**B.      Dr. Mussoline's Testimony is Sufficiently Reliable**

Plaintiffs claim that Dr. Mussoline's opinions should be excluded because "his methodology is unreliable."  Motion, p. 5.  However, Plaintiffs incorrectly seek to apply a scientific methodology to Dr. Mussoline's expert testimony that is based on personal knowledge and experience rather than technical expertise.

In a case such as this, where an expert is proffered to testify regarding non-scientific matters, "[t]he relevant reliability concerns [will] focus upon personal knowledge [and] experience" of the witness and the methodology used will be applying that experience to the facts of the case.  *Roberson v. City of Philadelphia*, Civ. No. 99–3574, 2001 WL 210294, at *5, n.10 (E.D. Pa. Mar. 1, 2001).  Indeed, "where applying the *Daubert* factors does not appear workable, the Court is guided by *Kumho*'s forewarning that in certain cases, the 'relevant reliability inquiry concerns may focus upon personal knowledge or experience.'"  *Voilas v. General Motors Corp.*, 73 F. Supp. 2d 452, 461 (D.N.J. 1999) (*quoting Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).  Under *Kumho*, the *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case."  *Id.* at 141.

In questioning Dr. Mussoline's methodology, Plaintiffs complain that when asked about his methodology at his deposition, Dr. Mussoline stated, "30 years of experience.  That's the methodology."  Motion, p. 6 (quoting Motion, Exh. B

5

(Mussoline Dep.) at 48:22-49:3. Yet Dr. Mussoline explained how his decades of experience informed his methodology in his expert report:

> In order to arrive at my opinions, I have reviewed the materials listed below and relied upon my 38 years of experience as an educator in the Commonwealth of Pennsylvania, my six years' experience as a high school teacher, my varsity and junior varsity coaching experience as well as being an Assistant Athletic Director, my two years as a middle school assistant principal, my two years as a high school assistant principal, my nine years as a high school principal, and 19 years as a superintendent of schools serving three districts . . . .  A significant part of my work over those 38 years as an educator in Pennsylvania has been overseeing extracurricular activity programs.  I have served in head coaching positions, assistant coaching positions, an assistant athletic director position, principal in charge of athletics, and superintendent of schools having to review and uphold coaching rules, hiring and firing athletic coaches and athletic directors, as well as having to suspend numerous players from participation in extracurricular activities for rule infractions.

Motion, Exh. A, p. 1-2.

As Plaintiffs note, the three requirements that an expert must satisfy are "qualification, reliability and fit."  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  In *Orner v. Nat. Beef Packaging, Co., LLC*, No. 4:13-CV-0837, 2014 WL 6983231, at *5 (M.D. Pa. Dec. 9, 2014), the defendants filed a motion to strike the testimony of two experts, including the expert testimony of a vocational rehabilitation specialist offering his opinions with regard to reasonable accommodations for a packing plant employee with back problems. The motion made arguments very similar to those made by Plaintiffs here – that

the expert's report was unreliable and unhelpful to the court. In denying the

motion, in part, this Court held:

> Plaintiff has thoroughly stated Rappucci's qualifications, and we will
> not repeat all of them. We also find that based on Rappucci's
> undisputed 40 plus years experience as well as "numerous licenses
> and certifications related to disability analysis and management,
> rehabilitation counseling and case management and ergonomics" his
> observations and opinions present relevant evidence that helps the
> factfinder. As Plaintiff correctly states, "Mr. Rappucci's report and
> opinions are based upon his familiarity with the entire record
> surrounding [Plaintiff's] case, his on-site inspection of [Defendant's]
> facility, his forty year career as a vocational rehabilitation specialist,
> his knowledge of the ADA, and his reliance upon the guidance of
> technical manuals and publications with returning people to work
> within the parameters of the ADA."

*Id.* at *8 (brackets in original). Similarly, in this case Dr. Mussoline undoubtedly

has the necessary qualifications as an educator to opine on issues regarding

scholastic sports and student discipline. Plaintiffs do not even challenge those

credentials.[4]

However, Plaintiffs do challenge the reliability of Dr. Mussoline's report. In

*Orner*, the Court stated that the expert's testimony was reliable because he had

familiarized himself with the case at hand. As the Court wrote, "We agree with

Plaintiff . . . that Rappucci's Expert Report is reliable. . . . Mr. Rappucci acquired

sufficient data and personal knowledge upon which to base his expert opinions,

---

[4]     Indeed, Plaintiffs state in their Motion that "Dr. Mussoline has significant experience as a
school administrator." Motion, p. 19.

both with respect to the reasonableness of the potential accommodations and as to the appropriateness of the interactive process." *Id.* at *7.  In this case, Dr. Mussoline reviewed the relevant pleadings and discovery to inform himself as to the facts of the case to reliably provide his opinions based on his many years of experience as an educator.  Indeed, there is no argument in the Plaintiffs' motion that Dr. Mussoline has not reliably applied his experience as an educator familiar with scholastic sports and student discipline to the facts of this case.

The Third Circuit has held that Federal Rule of Evidence 702 governing expert testimony has "a liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

In *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002), the Third Circuit considered the determination of the reliability of experience-based knowledge as set out in *Kumho Tire*.  In that trademark infringement case between competing catalog sales companies, the court heard a challenge to the testimony of an expert who had 20 years' experience in the mail-order catalog field, as the defendant argued that the expert's methodology was deficient.  *Id.* at 329.  In upholding the admission of the expert's testimony, the court stated, "In the present case, Schulte's testimony was based on his "personal knowledge or experience," *Kumho Tire*, 526 U.S. at 150, 119 S.Ct. 1167, rather than a methodology that satisfies the *Daubert* factors."  The court then noted that

the expert had reviewed all the relevant case evidence, just as Dr. Mussoline has done here.  *Id.*   Therefore, because Dr. Mussoline's testimony is based on his experience, his testimony should not be excluded simply because it doesn't comport with the technical factors in Daubert.

Because Dr. Mussoline is clearly qualified as an expert and because his testimony is reliable, the real question is the weight to be accorded to his testimony, which is the sole province of the jury.  *Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").  Accordingly, the motion must be denied.

Plaintiffs further question Dr. Mussoline's testimony by claiming that he did not identify specific experiences for his opinion that the Cheerleading Rules are typical, arguing that he "ask[s] the trier of fact to take his word for it."[5]  Motion, pp. 6-7.   Yet in his deposition testimony, Dr. Mussoline stated that while he did not have a specific set of rules in mind as "typical," he was comparing the Mahanoy rules to those in the school districts where has worked, "including the district I work in currently."  Motion, Exh. B, 32:1-15.

---

[5]   Ironically, Plaintiffs cite no cases – nor any other authority – for the proposition that an expert witness must identify specific prior comparators for their opinions, effectively asking this Court to take their word as to how it should evaluate expert witnesses.

More importantly, the Plaintiffs mischaracterize Dr. Mussoline's testimony as offering "differing definitions of what he meant by 'typical.'"  Id. at p. 7.  In his report, he specifically states, "The rules enumerated in the Mahanoy Area Cheerleading Rules are very typical compared to most cheer programs across the Commonwealth."  Motion, Exh. A, p. 4.  He also provides examples of "typical extracurricular rules."  *Id.* at pp. 3-4.  Plaintiffs point out that at his deposition, Dr. Mussoline testified that the rules were typical because they "enumerate the things that the coach wants to see the girls and guys do," and because there is nothing in the Cheerleading Rules that he found surprising.  Motion, p. 7.  These statements are not contradictory.  A set of rules can be typical for more than one reason, and both answers provided by Dr. Mussoline are perfectly acceptable.

Plaintiffs also challenge Dr. Mussoline based on his responses to vague deposition questions regarding his report.  In the Motion, Plaintiffs recount a portion of Dr. Mussoline's expert report explaining the year-round nature of high school cheerleading programs as "an intense year-long sport" with "stressful competitions, all the evening events often back-to-back, the community parades, the bus travel, the time spent together."  Motion, p. 8 (quoting Motion, Exh. A, p. 5).  They then note that at his deposition, when asked "Did each of those factors inform your analysis in this case?" and "Did any of them affect your analysis in this case?", Dr. Mussoline stated they did not.  However, Plaintiffs do not explain

why those factors are a key to Dr. Mussoline's opinions.   At the deposition, counsel immediately followed up these questions by asking, "So your opinionings wouldn't be any different if the Mahanoy Area School District's cheerleading program didn't match that description?", and Dr. Mussoline responded, "No, it wouldn't be any different."   Motion, Exh. B, 66:11-14.   In doing so, Dr. Mussoline expounded his prior answers, explaining that B.L.'s suspension would have been appropriate even in a less intense scholastic sport.   Importantly, nothing in this line of questioning calls into doubt the qualification of Dr. Mussoline to opine on educational norms or the reliability of his analysis of the situation.   The same is true regarding Plaintiffs' questioning of Dr. Mussoline and his knowledge of the Mahanoy City area.   *See* Motion, pp. 9-10.

## C.   Dr. Mussoline's Testimony Fits The Case and Is Helpful to a Jury

Plaintiffs next allege that certain of Dr. Mussoline's opinions "lack fit" for this case because they are irrelevant to the issues at hand.   However, Plaintiffs seemingly object because Dr. Mussoline's testimony does not fit with the issues in this case as the Plaintiffs are framing them.   With respect to the "fit" prong, expert testimony must "aid the jury in resolving a factual dispute."   *Lauria v. Amtrak*, 145 F.3d 593, 599 (3d Cir. 1998).   As will be shown, Dr. Mussoline's testimony would aid a jury in deciding the legal issues in this case.

Plaintiffs first claim that Dr. Mussoline's testimony deeming disrespect by students as discrediting the school and community is not relevant because the "relevant inquiry is . . . whether the disciplined speech was materially disruptive." Motion, p. 11.  Yet Plaintiffs fail to address the crux of the Defendant's argument that *Tinker* allows discipline resulting from rules instituted as part of a school's educational mission.  *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment [Docket 38], pp. 9-11.  The Plaintiffs fail to address the fundamental distinction that *Tinker* dealt with an expulsion from school, whereas, in contrast, this case applies to disqualification from a voluntary extracurricular activity due to the Plaintiff's violation of the rules that formed a condition of her participation.  Dr. Mussoline states in his report, "It is through these extracurricular rules that we impart very important life skills."  Motion, Exh. A, p. 4.  Therefore, because extracurricular rules serve a valid educational mission, the District's inability to enforce the Cheerleading Rules would create a likelihood of substantial disruption of the District's educational mission under *Tinker v. Des Moines Indep. Cmty. School Dist.*, 393 U.S. 503, 506 (1969).  Accordingly, Dr. Mussoline's testimony is extremely relevant.  Where else but through the type of expert testimony that is being offered by Dr. Mussoline would a jury hear the reason and purposes of such extracurricular programs, the nature and rationale for the rules, and they typicality of the rules?

12

Plaintiffs next argue that Dr. Mussoline's testimony regarding the "typical" and "reasonable" nature of the Cheerleading Rules is irrelevant to the First Amendment issue in this case. Motion, pp. 10-14. However, Plaintiffs do not consider whether those factors affect their other claims, including whether the Cheerleading Rules are overbroad. Two of the factors to be considered in determining possible overbreadth are the expected frequency of potential impermissible application of the rules and the District's interest in the rules. *Aiello v. City of Wilmington, Del.*, 623 F.3d 845, 854-55 (3d Cir. 1980). If cheerleading rules such as Mahanoy's are commonplace throughout the Commonwealth, that would tend to show that the likelihood of impermissible applications of the rules are low since the courts are not flooded with First Amendment claims from cheerleaders. Furthermore, if similar rules are widely accepted, it would tend to show that the Mahanoy Area School District and school districts throughout Pennsylvania share an interest in maintaining civility and encouraging good sportsmanship. Therefore, while not dispositive, Dr. Mussoline's testimony would aid a jury in its determination of the legal issue of overbreadth, and as such, the testimony must be allowed.

### D.   Dr. Mussoline's Testimony Will Not Include Legal Conclusions

Plaintiffs' final argument is that Dr. Mussoline should not be permitted to opine on legal issues or matters related to collegiate cheerleading recruiting. The

District acknowledges that Dr. Mussoline may not provide legal conclusions in his testimony; however, not all the examples provided by the Plaintiffs from Dr. Mussoline's report are legal conclusions. *See* Motion, pp. 15-16.

### 1. Dr. Mussoline should be permitted to testify without legal conclusions on practices regarding extracurricular activities

Plaintiffs first note that Dr. Mussoline opines on whether participation in extracurricular activities is a privilege or a right.[6]   *Id.*   While Dr. Mussoline is admittedly not an expert on legal rights, he should be permitted to testify concerning whether or not participation in extracurricular activities is a right or a privilege in a layman's sense – *i.e.*, whether or not Pennsylvania school districts ever exclude students from extracurricular activities and on what grounds.   If school districts have historically been permitted to remove students from extracurricular activities for reasons that they are not permitted to remove students from regular classes – *e.g.*, poor academic performance, violation of team rules, failure to meet performance standards – the District's argument that B.L. did not have a property right to be on the cheerleading team is bolstered. *See Dominic J. v. Wyoming Valley West High School*, 362 F. Supp. 2d 560, 571-72 (M.D. Pa. 2005) (Caputo, J.) (holding that students do not have a protected property interest in

---

[6]     While Plaintiffs offer five alleged excerpts from Dr. Mussoline's report allegedly offering legal conclusions (Motion, pp. 15-16), the first four address the issue of whether participation in extracurricular activities is a right or a privilege.  As such, Plaintiffs only allege two issues on which Dr. Mussoline allegedly offers legal conclusions.

extracurricular activities); *see also Johnson v. Cache County School Dist.*, 323 F. Supp. 3d 1301 (D. Utah 2018) (rejecting preliminary injunction on First Amendment claim by cheerleader removed from team for using profanity).

Plaintiffs next claim that Dr. Mussoline provided an improper legal opinion in stating that suspending B.L. from the cheerleading team for a year was "within the right of the coach given the fact B.L. clearly violated the team rules." Motion, p. 16 (quoting Motion, Exh. A, p. 6). Although Dr. Mussoline uses the word "right" in his analysis here, it comes in the larger context of an analysis of the District's efforts to use extracurricular rules to teach students good citizenship. As such, Dr. Mussoline is actually opining on whether the decision to suspend B.L. was reasonable within the context of common school district practices as well as in keeping with the District's educational mission. Accordingly, exclusion of this testimony is unnecessary and would be improper.

### 2. Dr. Mussoline has relevant experience with collegiate cheerleading in addition to his online research

Plaintiffs' final argument is that Dr. Mussoline's testimony regarding collegiate cheerleading should be excluded because he researched the topic online. Motion, p. 18.[7] However, Dr. Mussoline testified at his deposition that he was

---

[7]   Plaintiffs state in the Motion that B.L. is not alleging that she was harmed in her ability to obtain a college scholarship for cheerleading. Motion, p. 13. As such, any testimony on the subject by Dr. Mussoline would be moot, and there would be no need to exclude it. In the Complaint, Plaintiffs allege that "[c]olleges and universities judge applicants not only on their

basing his opinion on his personal experience and that he conducted the online

research to confirm that his experience was commonplace:

**Q:**    Now with respect to the last section of you report about college scholarships for cheerleading, can you describe the basis for your expertise about college cheerleading recruitment?

**A:**    Just 30 years of watching recruitment from a coach to a principal to a superintendent.

**Q:**    Okay.

**A:**    In 30 years, I have never, in any of the schools I've been to, sat through a cheerleader getting a college scholarship, being given a letter of intent to cheer.  I have sat through many football players, basketball players, women swimmers, lacrosse players, baseball players, softball players.  I have never – maybe I just missed it.   I have never sat through one time that I can remember where a cheerleader was given a scholarship ahead of time.

**Q:**    Okay.  Did you do any research to try to determine whether your experience is true, generally?

**A:**    I did.  I did search the web and I looked at trying to find how college cheerleaders are recruited . . .

. . .

**Q:**    Okay.  And just to get back to your personal experience, how many high school cheerleaders were attempting to cheer in college that you were aware of?

. . .

**A:**    So I'm aware of many that did that.  Again, I'm just not aware of anybody getting a scholarship.

---

academic records, but also on the depth of their involvement in extracurricular activities.  Being removed from the squad impairs B.L.'s opportunities to gain admission to top colleges."  Compl., ¶¶ 60-61.  However, because the preliminary injunction in this matter returned B.L. to the cheerleading team after only a very brief separation, this argument is also moot, and no testimony regarding college admissions will be necessary in this case.

Motion, Exh. B, 77:10-79:14.  Counsel's questioning of Dr. Mussoline regarding whether he did any research to confirm his personal experience implies that if he had failed to do any such research, Plaintiffs would claim that he had not made an effort to confirm that his experience was common.  As such, the question was designed to place Dr. Mussoline in a no-win situation.  However, because his testimony is indeed based on his personal experience and was merely confirmed by his research efforts, there is no basis for his testimony to be excluded.

## IV.   CONCLUSION

For the reasons stated in this brief, the District respectfully requests that this Court deny the Motion and permit Dr. Mussoline to provide testimony in this matter.

Respectfully submitted,

Date:  February 8, 2019

/s/ David W. Brown
Michael I. Levin (PA 21232)
David W. Brown (PA 201553)
LEVIN LEGAL GROUP, P.C.
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
mlevin@levinlegalgroup.com
dbrown@levinlegalgroup.com
Phone: (215) 938-6378

*Attorneys for Defendant*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.8(b)(3), I hereby certify that the foregoing Defendant's Brief in Opposition to Plaintiff's Motion to Exclude Expert Report and Testimony of Lawrence J. Mussoline, Ph. D., complies with the 5,000-word limit of Local Rule 7.8(b)(2).

Date:  February 8, 2019                    */s/ David W. Brown*
                                           David W. Brown

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of February 2019, I electronically re-transmitted the foregoing Brief in Opposition to be filed to the Clerk's Office using the Court's Electronic Case Filing system ("ECF") for filing and transmittal of a Notice of Electronic Case Filing to all counsel via the ECF, in accordance with Fed. R. Civ. P. 5(b) and M.D. Pa. L.R. 5.7.

                                           */s/ David W. Brown*
                                           David W. Brown

1